[L. A. No. 29870. In Bank. Dec. 2, 1971.]

WILLIAM A. BUDD, Plaintiff and Appellant, v.
ALAN NIXEN, Defendant and Respondent.

196

COUNSEL

Hunt, Liljestrom & Wentworth and Vernon W. Hunt, Jr., for Plaintiff and Appellant.

Groff, Dunne, Shallcross & Kane and Russell E. Shallcross for Defendant and Respondent.

OPINION

**TOBRINER, J.** — This case is a companion to *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, ante,* page 176 [98 Cal.Rptr. 837, 491 P.2d 421], also decided today. In *Neel* we conclude that the statute of limitations for legal malpractice, as for all professional malpractice, commences to run when the client discovers, or should reasonably discover, his cause of action. Plaintiff here discovered the malpractice on September 14, 1964, but did not bring suit until September 11, 1967, almost three years later. The case must turn, therefore, upon the issue of when the cause of action accrued. If plaintiff suffered damage and thus acquired an accrued cause of action prior to September 11, 1965, the applicable two-year statute of limitations would have run before he filed his action. Since this issue arises only because of today's ruling in *Neel,* the trial court naturally did not probe that problem but, instead, held that the cause of action matured at

the time of the negligent act. We hold that a cause of action for legal malpractice does not accrue until the client suffers damage and that the determination of that date raises an issue of fact. We must therefore reverse the judgment of that court and remand the cause for further proceedings.

On November 8, 1962, William A. Budd, plaintiff in the present case, was president and a stockholder of a corporation known as Hawarden Hills, Inc. in Riverside, California. On that date the corporation entered into a written agreement with Albert Milburn, a licensed real estate broker, to list certain real property for sale. Thereafter a dispute arose between Milburn and the corporation concerning the contract. As a consequence, Milburn instituted an action on February 5, 1963, in Riverside County Superior Court against the corporation; its president, William A. Budd; its vice-president; its secretary-treasurer; and a number of Does. The complaint alleged a breach of the contract between Milburn and Hawarden Hills; the plaintiff likewise sought to impose personal liability for the corporation's alleged breach of contract on Budd and the other officers of Hawarden Hills.

The corporation then retained Alan Nixen, defendant in the present case, to defend the action against it. On May 3, 1963, Nixen filed an answer on behalf of the corporation alone, admitting that the corporation had executed the agreement but denying any breach or liability. At the same time, Nixen filed a cross-complaint, naming the corporation, Budd, and the other corporate officers as cross-complainants. In July, Nixen told Budd that he should file an answer to the Milburn complaint in his individual capacity; Budd then retained Nixen on July 31, 1963, to represent him in defense of the Milburn claim. Although the attorney subsequently filed an answer for Budd, that answer lacked any allegation that Budd had signed the contract with Milburn only in his capacity as president of the corporation and therefore bore no personal liability on the contract.

Proceeding to trial by the court on April 14, 1964, the case was submitted on April 27, 1964. While the suit still remained under submission, on September 15, 1964, Budd relieved Nixen as his attorney of record, retained R. T. Deissler, another attorney, and discovered the alleged negligence of his first attorney.

On October 28, 1964, the trial court filed the following memorandum order: "Court orders judgment in favor of plaintiff and against defendants in the sum of $75,000.00. Plaintiff's counsel to prepare findings of fact and conclusions of law, and formal judgment." To relieve Budd of the failure to plead a crucial defense in the action, the new attorney, Deissler, filed an opposition to proposed findings of fact on March 26, 1965. Neverthe-

less, the trial court adopted the prevailing party's findings and conclusions, entering judgment against both the corporation and Budd on November 4, 1965.

Deissler then filed Budd's motion for new trial, but it was denied.[1] Budd's notice of appeal was belatedly filed, and on September 7, 1966, his appeal was dismissed. Remittitur later issued as to the remaining defendants. Budd was compelled to pay Milburn $38,450.61 of the $75,000 judgment.

On September 11, 1967, Budd filed the instant action in Riverside Superior Court against his former attorney Nixen to recover damages resulting from the judgment rendered against him. The trial court, however, sustained Nixen's motion for a summary judgment on the ground that the statute of limitations barred plaintiff's cause of action, stating that "the two-year period which governs a legal malpractice action, runs from the time of the negligent act and not from the time of discovery or the time damages are ascertained."[2]

For breaches of oral contracts and for torts affecting intangible property, such as occurred in the present case, Code of Civil Procedure section 339 prescribes a two-year limitation period. (See *Alter* v. *Michael* (1966) 64 Cal.2d 480, 483 [50 Cal.Rptr. 553, 413 P.2d 153].) In *Neel* we concluded that the statute of limitations did not begin to run upon a cause of action until the client discovered or should reasonably have discovered, that he had an actionable claim for professional malpractice. (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, ante,* p. 190 [98 Cal.Rptr. 837, 846, 491 P.2d 421].) In the present case, however, we deal with a situation in which the client contends that although he discovered his attorney's negligence, he had not, at that time, suffered consequential damages; hence, at that date he did not have an accrued cause of action for professional negligence.

---

[1]On January 21, 1966, Deissler withdrew from the case and Budd retained Best, Best & Kreiger to represent him in the further proceedings. Some of these facts appear in the record of Milburn v. Hawarden Hills, Inc. et al., Riverside Super. Ct. No. 78235, of which this court may take judicial notice. (Evid. Code, § 452, subd. (d).)

[2]Plaintiff initially alleged four separate grounds for recovery in his complaint: (1) tort for professional negligence, (2) fraud in knowingly concealing the professional negligence, (3) breach of warranty, (4) breach of contract. Defendant moved for summary judgment as to the tort (1), breach of warranty (3), and breach of contract (4) counts, but did not contend that the second cause of action for fraud was barred by the statute of limitations. The trial court later dismissed the cause of action for fraud without prejudice and then entered judgment. Plaintiff appealed only from the judgment as to the first, third, and fourth causes of action; the second cause of action for fraud is not before this court.

Code of Civil Procedure section 312 provides, "Civil actions, without exception, can only be commenced within the periods prescribed in this title, *after the cause of action shall have accrued,* unless where, in special cases, a different limitation is prescribed by statute." ■ The elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. (Prosser, Law of Torts (4th ed. 1971) § 30 at p. 143; see *Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 591 [15 Cal.Rptr. 821, 364 P.2d 685]; *Chavez* v. *Carter* (1967) 256 Cal.App.2d 577, 579 [64 Cal.Rptr. 350]; *Ishmael* v. *Millington* (1966) 241 Cal.App.2d 520, 523 [50 Cal.Rptr. 592]; *Modica* v. *Crist* (1954) 129 Cal.App.2d 144, 146 [276 P.2d 614]; *McGregor* v. *Wright* (1931) 117 Cal.App. 186, 193 [3 P.2d 624].)

■ If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. (See *Developments in the Law—Statute of Limitations* (1950) 63 Harv.L.Rev. 1177, 1201.) ■ The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. (*Walker* v. *Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513, 517 [6 Cal.Rptr. 924]; *McGregor* v. *Wright* (1931) 117 Cal.App. 186, 196-198 [3 P.2d 624].) ■ Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice.[3] ■ Prosser

---

[3]See *Heyer* v. *Flaig* (1969) 70 Cal.2d 223, 231 [74 Cal.Rptr. 225, 449 P.2d 161]; *United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 597 [83 Cal.Rptr. 418, 463 P.2d 770]. For a review of the California cases on accrual of a cause of action for legal malpractice, see *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, ante,* pages 183-187 [98 Cal.Rptr. 837, 491 P.2d 421].

The United States Court of Appeals for the District of Columbia recently reached the same conclusion in a malpractice action against attorneys whose allegedly negligent advice led to the impounding of the client's boats in Venezuelan waters. (*Fort Myers Seafood Packers, Inc.* v. *Steptoe and Johnson* (1967) 381 F.2d 261, 262 [127 App.D.C. 93], cert. den. 390 U.S. 946 [19 L.Ed.2d 1135, 88 S.Ct. 1033].) The court reasoned, "[T]he District of Columbia statute requires actions to be brought within three years 'from the time the right to maintain the action accrues.' [Citation omitted.] In ordinary negligence actions, this means the time when the plaintiff suffers injury. Thus '. . . the action . . . is based on negligence, sounds in tort, and did not accrue until injury resulted from the alleged negligence.' [Citation omitted.] Several state courts have adopted a special rule that time begins to run against a claim for malpractice when the defendant does the act that afterwards results in injury. . . . We see no good reason for drawing . . . a distinction between mal-

states the proposition succinctly, "It follows that the statute of limitations does not begin to run against a negligence action until some damage has occurred." (Prosser, Law of Torts (4th ed. 1971) § 30 at p. 144.)

The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. (See *Sonbergh* v. *MacQuarrie* (1952) 112 Cal.App.2d 771, 772 [247 P.2d 133]; *Wood* v. *Currey* (1881) 57 Cal. 208, 210.) █ Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.

█ Indeed, once having discovered his attorney's negligence and having suffered some damage, the client must institute his action within the time prescribed in the statute of limitations or he will be barred from thereafter complaining of his attorney's conduct. (See Code Civ. Proc., § 312; *Maguire* v. *Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 733-736 [146 P.2d 673, 151 A.L.R. 1062].) Ordinarily, the client has already suffered damage when he discovers his attorney's negligence, as occurred in *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, ante,* pages 183-187 [98 Cal. Rptr. 837, 491 P.2d 421]. In other cases, the infliction of the damage will alert the client to the attorney's negligence and thus the statute of limitations will then begin to run on any malpractice action. Only in the unusual case will the client discover his attorney's negligence without having suffered any consequential damage.

In the instant case, the facts may demonstrate that plaintiff suffered damage when, as he alleges in his complaint, he was compelled to "incur and pay attorney's fees and legal costs and expenditures." In response to interrogatories, plaintiff declared these fees included a fee of $1,028 paid to defendant on April 14, 1964, another fee of $475.38 paid defendant on September 14, 1964, a fee of $500 paid to attorney Deissler on September 14, 1964, as well as other fees paid to Deissler on October 8, 1964, November 20, 1964, December 31, 1964, and March 22, 1965.[4] If the facts show

practice suits and other negligence actions. The impounding of the boats might have been found to be an injury that resulted from appellees' erroneous legal advice. Since the suit was filed within three years, we think it was timely." (See also *Price* v. *Holmes* (1967) 198 Kan. 100 [422 P.2d 976, 980-991]; *Feldman* v. *Granger* (1969) 255 Md. 288, 296-297 [257 A.2d 421, 425-426]; *Atkins* v. *Crosland* (Tex. 1967) 417 S.W.2d 150, 153-154 [26 A.L.R.3d 1431].) The cases are collected in Annot. (1968) 18 A.L.R.3d 978.

[4]Cf. *Vallejo* v. *Montebello Sewer Co.* (1962) 209 Cal.App.2d 721, 734 [26 Cal.Rptr. 447] (opponent's answers to interrogatories may be used in support of a motion for summary judgment).

that defendant's negligence caused plaintiff to incur or pay such fees on or before September 11, 1965, two years prior to the institution of the present suit, then plaintiff's action in tort would now be barred by the statute of limitations. Plaintiff, for example, would have been entitled to recover, in whole or in part, the fees of $1,028 and $475.38 paid or advanced to defendant, to the extent that, in consequence of defendant's negligence, those fees exceeded the value of defendant's legal services. (See *Pete* v. *Henderson* (1954) 124 Cal.App.2d 487, 489-490 [269 P.2d 78].) Similarly, plaintiff would have had a viable claim, as tort damages, for the fees he paid Deissler, his second attorney, to the extent that such fees compensated that attorney for his efforts to extricate plaintiff from the effect of defendant's negligence. (See generally Annot. 45 A.L.R.2d 62.)

On the other hand, plaintiff maintains that he did not suffer damage until the formal entry of judgment in the real estate broker's suit against him. In that event, since judgment was not entered until November 4, 1965, plaintiff's action in the present case would not be barred by the statute of limitations. If plaintiff's action in tort had not earlier accrued, it at least matured on entry of judgment because he clearly then became obligated to pay a considerable sum to the broker or to post a bond on appeal. (See 3 Witkin, Cal. Procedure (1954) Enforcement of Judgment, § 2, at pp. 1966-1967.)[5]

In any event, the determination of the time when plaintiff suffered damage raises a question of fact. In some cases a court could conclude as a matter of law that no triable issue of fact arises as to when a client would have suffered such damage that he would have a cause of action for his attorney's negligence. (See, e.g., *Yandell* v. *Baker* (1968) 258 Cal.App.2d 308, 311-312 [65 Cal.Rptr. 606].) In other cases only the trier of fact can ascertain when the damage was sufficient to trigger the plaintiff's cause of action. (See *Oakes* v. *McCarthy Co.* (1968) 267 Cal. App.2d 231, 255 [73 Cal.Rptr. 127].)

---

[5]In *Walker* v. *Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513 [6 Cal.Rptr. 924], the plaintiff had requested that his insurance broker obtain a liability policy with limits up to $50,000, but the broker procured a policy with a limit of only $15,000. The plaintiff was involved in an accident and the injured party sought damages of more than $100,000. The jury returned a verdict of $100,000 against the plaintiff and the plaintiff brought action for negligence of the broker in obtaining a policy $35,000 below that requested. The court held that the statute of limitations ran from the date of entry of judgment and observed, "It is clear that mere possibility, or even probability, that an event causing damage will result from a wrongful act does not render the act actionable [citations omitted]. Of course, it is uncertainty as to the fact of damage, rather than its amount, which negatives the existence of a cause of action [citations omitted]. In the case at bar, the fact of any damage at all was completely uncertain until judgment in the personal injury action." (183 Cal.App.2d at p. 517.)

In the present case, the factual issue as to accrual of damage was not resolved. Indeed, defendant's motion for summary judgment rested solely on the proposition that the statute of limitations ran from the date of the negligent act. Plaintiff countered that the statute did not commence until damage occurred, and that such damage did not occur until entry of final judgment in the trial court on November 4, 1965. Neither party presented factual declarations relating to whether plaintiff had suffered damage prior to September 11, 1965, two years before plaintiff filed suit. Instead, the parties presented and argued the motion for summary judgment as a question of law; accordingly the trial court ruled upon the matter as a question of law, determining that the cause of action accrued on the occurrence of the negligent act. Yet we hold today that the cause of action in tort does not accrue until the client both sustains damage, and discovers, or should discover, his cause of action.[6]

Although we could thoroughly search the record in the present case, and likewise in the case of Milburn v. Hawarden Hills, to determine when we think actual damage first occurred, such a procedure is inappropriate. Since defendant did not contend that damage occurred before September 11, 1965, plaintiff has submitted no declaration on that subject. Whatever factual inferences we might draw from the record would not be conclusive; plaintiff, if given the opportunity, might offer explanations, or might raise issues of fact, which would preclude summary judgment. The proper answer to the question when plaintiff sustained actual damage before the filing of plaintiff's suit must await either a trial of the cause or a

---

[6]In addition to this cause of action in tort, plaintiff alleged that his attorney violated an oral contractual warranty to protect him from personal liability and also asserted that the attorney's negligence constituted a breach of the oral attorney-client contract. Since the cause of action for breach of such a professional service contract arises on the date of the breach, and no consequential or actual damages need be suffered to give the client a right to bring suit in contract (see *Alder* v. *Drudis* (1947) 30 Cal.2d 372, 382 [182 P.2d 195]; *DeCampos* v. *State Comp. Ins. Fund* (1954) 122 Cal.App.2d 519, 526 [265 P.2d 617]), the statutory limitations period commences when the client knows, or reasonably should know of the breach. (See *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, ante,* p. 176 [98 Cal.Rptr. 837, 491 P.2d 421]; *Riesen* v. *Leeder* (1961) 193 Cal.App.2d 580, 582 [14 Cal.Rptr. 469]; *Southern Cal. Enterprises* v. *Walter & Co.* (1947) 78 Cal.App.2d 750, 754-755 [178 P.2d 785]; *Crawford* v. *Duncan* (1923) 61 Cal.App. 647, 650-651 [215 P. 573].) In the instant case, the plaintiff alleged that he learned of defendant's breach of contract shortly after he discharged the defendant as his attorney and retained new counsel on September 15, 1964. Plaintiff did not institute the present suit until September 11, 1967—nearly three years later. The contractual action was thus clearly barred by Code of Civil Procedure section 339.

motion for summary judgment with declarations and points and authorities directed to that issue.

The judgment is reversed.

Wright, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.